UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| RONALD M. GREEN, | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| | : | 3:11-CV-01989 (VLB) |
| v. | : | |
| | : | |
| DGG PROPERTIES CO., INC., | : | |
| WATER'S EDGE REALTY, LLC, | : | |
| CLAUDIO MARASCO, MICHAEL DATTILO, | : | |
| and TINA DATTILO, | : | |
| Defendants. | : | January 31, 2013 |

MEMORANDUM OF DECISION GRANTING DEFENDANTS' MOTION TO DISMISS AND DENYING DEFENDANTS' REQUEST FOR ATTORNEYS' FEES [Dkt. 16]

I.    Introduction

The Plaintiff, Ronald Green ("Green"), brings this action against Defendants Dgg Properties Co., Inc. ("Dgg"), doing business as Water's Edge Resort & Spa ("Water's Edge" or the "Resort"), Water's Edge Realty, LLC ("Water's Edge Realty"), Claudio Marasco ("Marasco") (Executive Vice President of Water's Edge), Michael Dattilo (President of Water's Edge), and Tina Dattilo (General Manager of Water's Edge) alleging violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. (the "ADA") and Connecticut General Statutes §§ 46a-64(a)(1) and (2).  Defendants have moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted, and pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.  For the reasons that follow, Defendants' Motion to Dismiss is GRANTED.  The Court DENIES, however, Defendants' request for attorneys' fees.

1

II.   <u>**Factual Background**</u>

The following facts and allegations are taken from Plaintiff's complaint. [Dkt. 1, Compl.].  Plaintiff and his wife visited Water's Edge Resort, which boasts guest, conference and banquet rooms, a spa, salon, and several restaurants, for an overnight stay from July 17 to 18, 2010.  [Dkt. 1, Compl. at ¶¶ 11, 12].  The hotel portion of the Resort was originally constructed around 1940 and was renovated in the mid 1980s, and the Resort opened a new wing in 1999.  [Dkt. 1, Compl. at ¶¶ 13, 14].  Prior to their arrival, Plaintiff and his wife made reservations for dinner and brunch at the Resort's restaurant, inviting a business colleague and his spouse to join them, and appointments at the spa and salon facilities.  [Dkt. 1, Compl. at ¶¶ 17, 18].  While making these reservations, Plaintiff notified Water's Edge that he "was disabled, not ambulatory and substantially limited in mobility," that he used a walker and/or a wheelchair, and was "not otherwise able to move without assistance."  [Dkt. 1, Compl. at ¶ 19].  Plaintiff contends that, shortly after arriving at the Resort, it became apparent that parts of the Resort including Plaintiff's guest room, the restaurant, and the spa were not handicapped accessible.  [Dkt. 1, Compl. at ¶ 20].  Plaintiff further contends that Water's Edge falsely and deceptively "advertises on numerous websites and, in these and other advertisements, claims its facilities are wheelchair accessible."  [Dkt. 1, Compl. at ¶¶ 15, 16].  Plaintiff confronted the manager on duty regarding the limited accessibility and the allegedly false advertisements, and the manager "shrugged and speciously exclaimed, 'this is an old hotel.'"  [Dkt. 1, Compl. at ¶ 21].

2

As a result of the lack of ramp or wheelchair access to the dining facilities, Plaintiff and his wife were unable to dine in the main dining room on Saturday evening and were instead escorted "to a dilapidated and odiferous freight elevator (laden with food stuffs) that deposited them to the basement and back of the kitchen."  From there they were escorted to and ate in "an area where no other guests were seated."  [Dkt. 1, Compl. at ¶ 23].  Thereafter, Plaintiff and his wife "were forced to subsequently order dinner to their room but encountered difficulty because there was inadequate area for in-room dining, i.e. no dining table or chairs."  [Dkt. 1, Compl. at ¶ 24].  On Sunday, Plaintiff and his wife – along with Plaintiff's colleague and the colleague's spouse – elected to dine in the bar area, "despite ample – but inaccessible – seating in the dining room," in order to "avoid the further embarrassment, inconvenience and unhealthy experience of the freight elevator."  [Dkt. 1, Compl. at ¶ 26].  Because of his mobility restrictions, Plaintiff was likewise unable to access the spa and salon areas, which lacked ramp access and could only be reached via stairs.  [Dkt. 1, Compl. at ¶ 25].

Plaintiff asserts that "[a]t the time of Plaintiff's visit to Water's Edge, he used a walker and a wheelchair for mobility and qualified as an individual with a disability as defined by the ADA and the Connecticut General Statutes."  [Dkt. 1, Compl. at ¶ 3].  Plaintiff contends that the dining room, spa, and salon areas at Water's Edge violate § 12182(a) of the Americans with Disabilities Act and Conn. Gen. Stat. § 46a-64, regarding equal access in public accommodation to individuals with disabilities, that the defendants "have been on notice for years"

3

regarding these violations,[1] and that defendants have willfully failed to remedy the situation and modify the facilities to make them accessible to individuals with disabilities.  [Dkt. 1, Compl. at ¶¶ 27-29].

Plaintiff filed five complaints of discrimination (one each against the five defendants named in his complaint) with the Connecticut Commission on Human Rights and Opportunities ("CHRO").  [Dkt. 21, P's Memo in Opposition to Ds' MTD, at Exhs. A-E; Compl. at ¶ 2].  The CHRO issued a Release of Jurisdiction letter on November 23, 2011.  [Compl. at ¶ 2].  Plaintiff initiated this action on December 22, 2011.

## III.   Standard of Review

"'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  *Sarmiento v. U.S.*, 678 F.3d 147 (2d Cir. 2012) (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  While Rule 8 does not require detailed factual allegations, "[a] pleading that offers 'labels and conclusions' or 'formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Iqbal*, 556 U.S. at 678 (citations and internal quotations omitted).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it

---

[1]     As an example of such notice, Plaintiff cites to a 2001 Connecticut district court complaint alleging that Water's Edge violated the ADA "because it did not provide adequate access to individuals with a disability," the Resort's answer to the complaint, and the Court's Order approving a settlement agreement reached by the parties in that case.  [Dkt. 1, Compl. at ¶ 28 and Exhibit B].

'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (*quoting Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 557 (2007)).  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal citations omitted).

In considering a motion to dismiss for failure to state a claim, the Court should follow a "two-pronged approach" to evaluate the sufficiency of the complaint.  *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010).  "A court 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (*quoting Iqbal*, 556 U.S. at 679).  "At the second step, a court should determine whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'" *Id.* (*quoting Iqbal*, 556 U.S. at 679).  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (internal quotations omitted).

In general, the Court's review on a motion to dismiss pursuant to Rule 12(b)(6) "is limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007).  The Court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am.*

*Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir.1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005)(MRK).  Here, Plaintiff references in his complaint and relies on the five charges of discrimination he filed with the CHRO, which he has attached as exhibits to his Opposition to Defendants' Motion to Dismiss. [Dkt. 21, P's Memo in Opposition to Ds' MTD, at Exhs. A-E; Compl. at ¶ 2].  Therefore, the Court may consider these charges to analyze the pending motion to dismiss.

Lastly, in deciding a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) the Court "may resolve disputed factual issues by reference to evidence outside the pleadings, including affidavits."  *State Emps. Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 77 n. 4 (2d Cir. 2007).  *See also Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) ("In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) a district court may consider evidence outside the pleadings"); *Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000) (holding same).

IV.   <u>Discussion</u>

   a.  <u>Private Right of Action Under Connecticut Law</u>

Defendants contend that Plaintiff's claim of disability discrimination in public accommodations under Connecticut law must be dismissed because Conn. Gen. Stat. §46a-64 does not contain a private right of action.  In an analysis of whether a private right of action exists under a statute, courts in Connecticut must begin with the "well settled fundamental premise that there exists a

6

presumption in Connecticut that private enforcement does not exist unless expressly provided in a statute.  In order to overcome that presumption, the plaintiff bears the burden of demonstrating that such an action is created implicitly in the statute."  *Provencher v. Town of Enfield*, 284 Conn. 772, 777-78 (Conn. 2007).  "In determining whether a private remedy is implicit in a statute not expressly providing one, several factors are relevant.  First, is the plaintiff one of the class for whose ... benefit the statute was enacted ...?  Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? ...  Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff?"  *Id.* at 778 (*quoting Napoletano v. CIGNA Healthcare of Connecticut, Inc.*, 238 Conn. 216, 249 (Conn. 1996), cert. denied, 520 U.S. 1103 (1997)).

> Consistent with the dictates of General Statutes § 1-2z, however, we do not go beyond the text of the statute and its relationship to other statutes unless there is some textual evidence that the legislature intended, but failed to provide expressly, a private right of action. Textual evidence that would give rise to such a question could include, for example, language granting rights to a discrete class without providing an express remedy or language providing a specific remedy to a class without expressly delineating the contours of the right.

*Id.*  The stringency of the test for an implied right of action is such that, "since the [Connecticut Supreme Court] decided *Napoletano* [in 1996], we have not recognized an implied cause of action despite numerous requests."  *Id.* at 779 (citing cases in which an implied private right of action was not found).  "[I]t is a rare occasion that we will be persuaded that the legislature intended to create

something as significant as a private right of action but chose not to express

such an intent in the statute."  *Id.* at 780.

Conn. Gen. Stat. § 46a-64(a) provides that

> It shall be a discriminatory practice in violation of this
> section: (1) To deny any person within the jurisdiction of
> this state full and equal accommodations in any place of
> public accommodation, resort or amusement because of
> race, creed, color, national origin, ancestry, sex, marital
> status, age, lawful source of income, mental retardation,
> mental disability or *physical disability*, including, but not
> limited to, blindness or deafness of the applicant,
> subject only to the conditions and limitations
> established by law and applicable alike to all persons;
> (2) to discriminate, segregate or separate on account of
> race, creed, color, national origin, ancestry, sex, marital
> status, age, lawful source of income, mental retardation,
> mental disability, learning disability or *physical
> disability*, including, but not limited to, blindness or
> deafness.  (emphasis added)

Defendants are correct that the plain language of § 46a-64 does not prescribe a

private right of action.  Rather, Conn. Gen. Stat. § 46a-64(c) provides an

enforcement mechanism for violations of § 46a-64: "Any person who violates any

provision of this section shall be fined not less than twenty-five dollars or more

than one hundred dollars or imprisoned not more than thirty days, or both."[2]

However, Defendants ignore the corresponding administrative scheme

enumerated in Connecticut's civil rights law – under which Conn. Gen. Stat. §

46a-64 is codified – which explicitly provides a cause of action to those

---

[2] The Court notes that, pursuant to changes adopted by the Connecticut
legislature in 2012, the current text of Conn. Gen. Stat. § 46a-64(c) reads "Any
person who violates any provision of this section shall be guilty of a class D
misdemeanor."  This change in the penalty provided under the statute does not
affect this action, as Plaintiff's claims arise from his visit to Water's Edge in 2010.

individuals *who appropriately follow the prescribed administrative procedures*.

Conn. Gen. Stat. § 46a-82(a) provides that:

> Any person claiming to be aggrieved by an alleged discriminatory practice … may, by himself or herself or by such person's attorney, make, sign and file with the [CHRO] a complaint in writing under oath … which shall set forth the particulars thereof and contain such other information as may be required by the commission.

In turn, Conn. Gen. Stat. § 46a-100 authorizes a private cause of action after resort to and pursuant to a release of jurisdiction from the CHRO:

> Any person who has timely filed a complaint with the Commission on Human Rights and Opportunities in accordance with section 46a-82 and who has obtained a release from the commission in accordance with section 46a-83a or 46a-101, may also bring an action in the superior court for the judicial district in which the discriminatory practice is alleged to have occurred or in which the respondent transacts business, except any action involving a state agency or official may be brought in the superior court for the judicial district of Hartford.

Conn. Gen. Stat. § 101(d) states that "Upon granting a release, the commission shall dismiss or otherwise administratively dispose of the discriminatory practice complaint pending with the commission without cost of penalty addressed to any party." A plaintiff is required to procure a release from the CHRO prior to initiating a private cause of action; if a plaintiff fails to procure a release or adhere to these administrative procedures, a court lacks jurisdiction to hear his or her claims. *Ayantola v. Bd. of Trustees of Tech. Colleges*, 116 Conn. App. 531, 535 (Conn. App. Ct. 2009) (recognizing that § 46a-100 explicitly allows a plaintiff who has received a release of jurisdiction from the CHRO to file suit); *Okun v. Misiewicz*, No. CV9867084S, 2001 WL 985060 (Conn. Super. Ct. July 31, 2001)

(dismissing count because "[t]he plaintiff's failure to file a timely complaint with the CHRO and to obtain a release from the CHRO deprives the court of subject matter jurisdiction over count three of the complaint"); *Lunardini v. Mass. Mut. Life Ins. Co.*, 696 F. Supp. 2d 149, 166-67 (D. Conn. 2010) ("Under the plain text of the Connecticut statute, release of jurisdiction from the CCHRO is a prerequisite to the personal right of action provided by the statute. See Conn. Gen.Stat. § 46a-100"); *Pleau v. Centrix, Inc.*, 501 F. Supp. 2d 321, 328 (D. Conn. 2007) (holding that employee who filed only age and marital status claims with CHRO, and accordingly did not receive a release of jurisdiction with respect to gender discrimination claim, failed to exhaust administrative remedies, as required to give court jurisdiction over gender discrimination claim).

Here, Plaintiff filed complaints of discrimination with the CHRO (one each against the five defendants named in his complaint) under the ADA and Conn. Gen. Stat. § 46a-64(a).  Plaintiff has alleged in his complaint that he received a release of jurisdiction from the CHRO on November 23, 2011.  Thus, under the plain language of § 46a-100, if Plaintiff has exhausted the administrative remedies required under the statute, he is authorized to bring this court action for alleged violations of § 46a-64.  *See Desardouin v. United Parcel Serv., Inc.*, 285 F. Supp. 2d 153, 158-59 (D. Conn. 2003) (JCH) (recognizing that § 46a-100 authorizes "private causes of action after resort to the CHRO based on allegations of discriminatory practices," including violations of § 46a-64(a)); *McNamara v. Tournament Players Club of Connecticut, Inc.*, No. CV000093091, 2001 WL 1187091, at *3 (Conn. Super. Ct. Sept. 10, 2001) (holding that, where "plaintiffs

brought a claim [for violations of Conn. Gen. Stat. §§ 46a-64 and 46a-58(a)] before CHRO which was administratively dismissed [pursuant to a release of jurisdiction] then brought a separate cause of action" the court had jurisdiction to hear the claims); *Corcoran v. German Social Society Frohsinn, Inc.*, No. CV020562775S, 2008 WL 642659, at *6-7 (Conn. Super. Ct. Feb. 21, 2008) (rendering judgment against defendant under § 46a-64, and granting injunctive relief and damages to plaintiff).

The Court notes that Defendants' reliance on certain case law is misplaced. Defendants claim that "Connecticut courts have consistently held that Section 46a-64 is penal in nature and does not afford a private right of action." [Dkt. 16-1, Ds' MTD at p. 14]. Defendants go on to cite case law that does, in fact, support this proposition. However, the referenced case law is either outdated and fails to take into account relevant changes to Conn. Gen. Stat. § 46a-100, which currently authorizes a private cause of action as explained above, or features plaintiffs who failed to follow the administrative procedures outlined in the Connecticut civil rights law, thereby forfeiting their right to bring a private action.

In *Wright v. City of Hartford*, plaintiff brought suit after receiving a release to sue letter from the CHRO for alleged violations of § 46a-60 (prohibiting discrimination in employment). No. CV 970570863S, 1998 WL 83670 (Conn. Super. Ct. Feb. 13, 1998). However, in his complaint with the court, plaintiff instead alleged only that the defendant engaged in discriminatory practices under Conn. Gen. Stats. § 46a-58 and §§ 46a-64(a)(1) and (2). The Connecticut superior court held that

11

> **Private actions brought pursuant to such authorizations are governed by §§ 46a-100, et seq. While such actions may seek wide ranging legal and equitable relief, such relief is only applicable to claims of discriminatory employment practices. In this case, the discrimination count does not claim discriminatory employment practices, nor does it rely on § 46a-60. To the contrary, the count is based on § 46a-58 (deprivation of rights), § 46a-64(a)(1) (denial of public accommodation) and § 46a-64(a)(2) (discrimination). All of these statutes are penal in nature. There is no statutory authorization to bring private actions based on a violation of the above statutes, nor does the Release to Sue letter authorize such an action.**

*Id*. at *3.  At the time that *Wright* was decided, Conn. Gen. Stat. § 46a-100 provided a private cause of action only for violations of Conn. Gen. Stat. § 46a-60:

> **Any person who has timely filed a complaint with the commission on human rights and opportunities … *alleging a violation of section 46a–60 of the general statutes* and who has obtained a release from the commission in accordance with section 2 of this act, may also bring an action in the superior court for the judicial district in which the discriminatory practice is alleged to have occurred or in which the respondent transacts business … (emphasis added)**

1991 Conn. Legis. Serv. P.A. 91-331 (S.S.B. 292) (WEST).  The statute was later amended effective October 1, 1998, after the decision in *Wright*, to delete the reference to § 46a-60, thereby creating a private right of action for individuals who had received a release of jurisdiction letter from the CHRO for other violations of the civil rights law, as above.  1998 Conn. Legis. Serv. P.A. 98-245 (S.H.B. 5673) (WEST).  Thus, the decision in *Wright* is necessarily limited in scope by time and may now be read to support the proposition that, without a release of jurisdiction from the CHRO, a plaintiff may not bring a private action, nor may he bring a private action for allegations not specifically released by the CHRO.

In support of their proposition that Plaintiff here does not have a private cause of action, Defendants cite, for example, to *Smith v. New Horizon Computer*, No. CV084026134S, 2009 WL 862749 (Conn. Super. Ct. Mar. 10, 2009), which relied heavily on the decision in *Wright*.  The *Smith* court upheld a motion to strike the complaint enumerating a claim under § 46a-64(a), concluding that "given the persuasiveness of [prior] Superior Court opinions [including *Wright*] and because the plain language of § 46a-64(a)(1) and (2) indicates that the statute was meant only to be enforced through fines or imprisonment, the defendant's motion to strike the entire complaint is granted, as Connecticut's public accommodation statute does not provide for either an express, or implied, private cause of action under § 46a-64(a)(1) and (2)."  *Smith*, 2009 WL 862749, at *2 n. 4.  *Smith*, however, is inapplicable to the analysis in the present action, as there is no indication in *Smith* that the pro se plaintiff submitted his claim first to the CHRO, obtained a release of jurisdiction from the CHRO in accordance with either § 46a-83a or § 46a-101, or subsequently filed an action in court pursuant to § 46a-100.  Instead, plaintiff appears to have filed his claims of discrimination directly with the court, in which case he failed to correctly utilize the administrative procedures enumerated in Connecticut's civil rights law.  In light of his failure to follow these administrative procedures, plaintiff had no private right of action to sue under Conn. Gen. Stat. § 46a-64(a).

Similarly, in *Batiste v. Soundview Med. Assocs.*, on which Defendants also rely, the superior court struck plaintiff's § 46a-64 claim from his complaint, holding that this statute is penal in nature and does not afford a private right of

action, and citing to *Wright* for this proposition.  No. CV065001278, 2008 WL 1105247 (Conn. Super. Ct. Mar. 25, 2008).  "The court in *Wright* noted that on many occasions the legislature had provided express language creating a private right of action and in the case of this particular statute [§ 46a-64(a)] the legislature did not provide any language indicating its desire for a private right of action and, therefore, it should not be implied by the court."  *Id*. at *3.  Nowhere does the court state, though, that the CHRO released jurisdiction over plaintiff's claim under § 46a-64(a).  In fact, in its analysis of plaintiff's claim under § 46a-58, the court noted that

> Section 46a-100 does allow the plaintiff to bring a private cause of action once he has obtained a release from the Connecticut Commission on Human Rights and Opportunities, but nowhere in that section does it specifically allow the plaintiff to bring a private cause of action under § 46a-58. The court interprets the statute to mean that, *after obtaining his release, the plaintiff may bring a private cause of action but should base it on the underlying claims that the plaintiff has already alleged in this complaint*.  (emphasis added)

*Id*. at *3.  Therefore, under *Batiste*, § 46a-100 creates a right of action for allegations of discrimination *that were the subject of a CHRO complaint and have subsequently been released by the CHRO*.  A plaintiff may not maintain a private action for any allegation not brought before or released by the CHRO. Defendants' reliance is therefore misplaced.

Lastly, Plaintiff and Defendants alike assert that the private right of action issue has not been addressed by the Connecticut Appellate Court, placing their reliance on the decision in *Corcoran v. German Social Society Frohsinn, Inc.*, 99

Conn. App. 839 (Conn. App. Ct. 2007).  In *Corcoran*, the court heard an appeal of the trial court's conclusion that the defendant was not a public accommodation within the meaning of § 46a-64(a).  Two issues were presented upon appeal: (1) whether "the court failed to apply the proper legal standard in evaluating whether the defendant was a public accommodation" and (2) whether "the court's finding as to the defendant's selectivity of membership was clearly erroneous"  *Id*. at 840. The Appellate Court reversed the superior court's judgment, holding that the lower court had committed legal error by applying the incorrect test for whether the defendant was a public accommodation.  *Id*. at 844-45.  The Appellate Court neither mentioned nor opined as to whether § 46a-64 creates a private right of action; rather, it considered only the two discrete issues presented on appeal, reversing and remanding to the trial court for further proceedings.

Defendants here rely on the Appellate Court's silence in *Corcoran* to bolster their proposition that their erroneously cited superior court cases are dispositive.  Plaintiff relies on *Corcoran* for the proposition that, because the Appellate Court did not address the issue, a private right of action may be inferred under § 46a-64.  The Court finds both propositions to be in error and at odds with *Corcoran*'s prior and subsequent history.  A quick reading of the trial court opinion in *Corcoran* reveals that the plaintiff filed a complaint of gender discrimination by a public accommodation in violation of § 46a-64 with the CHRO, which granted plaintiff a release of jurisdiction for this claim.  *Corcoran v. German Social Soc. Frohsinn, Inc.*, No. 562775, 2005 WL 1524881, at *1 (Conn.

Super. Ct. Jun. 1, 2005).  Plaintiff then commenced litigation based on this claim in Connecticut superior court.

The Appellate Court, then, did not *need* to determine whether plaintiff had the right to bring a private right of action, as that right had already been conferred pursuant to § 46a-100 and the CHRO's release of jurisdiction.  Furthermore, upon remand the trial court rendered judgment against the defendant, holding that it was a place of public accommodation subject to liability under § 46a-64, and granted injunctive relief as well as damages for emotional distress to the plaintiff. *Corcoran v. German Social Soc. Frohsinn, Inc.*, No. CV020562775S, 2008 WL 642659, at *6-7 (Conn. Super. Ct. Feb. 21, 2008).  Thus, the trial court recognized a private right of action under § 46a-64 for a plaintiff who follows the appropriate administrative channels and obtains a release of jurisdiction from the CHRO for its § 46a-64 claims.  Connecticut courts have frequently upheld a private right of action under § 46a-100 for violations of § 46a-64.  *See infra.*

In sum, Plaintiff is expressly authorized by § 46a-100 to bring this action. However, plaintiff has not attached a copy of the release of jurisdiction letter to any of his pleadings, nor has he alleged to which of his complaints with the CHRO the release of jurisdiction pertains.  Thus, the Court cannot discern against which of the Defendants Plaintiff is authorized to bring this action.  Accordingly, the Court GRANTS dismissal of Plaintiff's discrimination claim brought pursuant to Conn. Gen. Stat. § 46a-64(a).  *See, e.g., Desardouin*, 285 F. Supp. at 159 (dismissing § 46a-64(a) claim where plaintiff failed to allege in his complaint

16

receipt of CHRO release letter and only alleged receipt of such in opposition to defendant's motion to dismiss).

      b. <u>Disability under the ADA and Connecticut General Statutes</u>

      Defendants argue that Plaintiff has failed to state a claim under either the ADA or Connecticut law because he has alleged only that he was temporarily impaired.  Under the ADA, "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."  42 U.S.C. § 12182(a).  "In order to state a claim for violation of Title III … a plaintiff must 'establish that (1) he or she is disabled within the meaning of the ADA; (2) that the defendants own, lease, or operate a place of public accommodation; and (3) that the defendants discriminated against the plaintiff within the meaning of the ADA.'"  *Krist v. Kolombos Rest. Inc.*, 688 F.3d 89, 94-95 (2d Cir. 2012) (*citing Roberts v. Royal Atlantic Corp.*, 542 F.3d 363, 368 (2d Cir. 2008), *cert. denied*, —— U.S. ——, 129 S.Ct. 1581, (2009)).  "To establish a disability, plaintiff must (1) show that [he] suffers from a physical or mental impairment, (2) identify the activity claimed to be impaired and establish that it constitutes a 'major life activity, and (3) show that [his] impairment substantially limits the major life activity previously identified."  *Kravtsov v. Town of Greenburgh*, No.10–cv–3142 (CS), 2012 WL 2719663, at *10 (S.D.N.Y. July 9, 2012) (internal quotation marks and citations omitted).

Because Plaintiff's claim arises after January 1, 2009, the ADA Amendment Act of 2008 ("ADAAA") governs the analysis.  The ADAAA "substantially broadened the definition of a disability under the law, in explicit response to *Sutton v. United Air Lines*, 527 U.S. 471 (1999) and *Toyota Motor Mfg. v. Williams*, 534 U.S. 184 (2002), in which the ADA's terms defining disability had been strictly defined."  *Hutchinson v. Ecolab, Inc.*, No.3:09cv1848 (JBA), 2011 WL 4542957, at *7 (D. Conn. Sept. 28, 2011).  Under the ADAAA, the definition of "disability" is construed in "favor of broad coverage of individuals under this chapter, to the maximum extent permitted by the terms of this chapter."  42 U.S.C. § 12102(4)(A).  "Disability" is defined as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individuals; (B) a record of such an impairment; or (C) being regarded as having such an impairment."  42 U.S.C. § 12102(1).  "The ADAAA expanded the interpretation of the ADA's three-category definition of 'disability.'  For example, 'major life activity' includes 'caring for oneself, performing manual tasks ... walking, standing, lifting, bending, speaking, breathing.., and working,' as well as 'the operation of a major bodily function,' including 'neurological, brain, respiratory, circulatory, endocrine, and reproductive functions.'"  *Hutchinson*, 2011 WL 4542957, at *8 (*quoting* Pub. L. No. 110–325, 122 Stat. 3553, 3555 (2008)).

Equal Employment Opportunity Commission ("EEOC") regulations implementing the ADAAA, although having no binding effect, are "useful to understanding the intended meaning of the Amendments."  *Hutchinson*, 2011 WL 4542957, at *8 n. 6.  The EEOC regulations provide that under the ADAAA an

impairment is a disability within the meaning of the statute where "it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population.  An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting."  29 C.F.R. § 1630.2(j)(1)(ii).  The regulations further provide that "[a]n impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active."  29 C.F.R. § 1630.2(j)(1)(vii).

Moreover, "temporary, non-chronic impairments of short-duration, with little or no long term or permanent impact, are usually not disabilities." *Kennebrew v. N.Y. City Housing Auth.*, No. 01 CIV 1654, 2002 WL 265120, at *18 n. 32 (S.D.N.Y. Feb. 26, 2002); *Leahy v. Gap. Inc.*, No. 07–CV–2008, 2008 WL 2946007, at *4 (E.D.N.Y. July 29, 2008) ("For purposes of the ADA, short term, temporary restrictions are not 'substantially limiting' and do not render a person 'disabled.' "); *Green v. N.Y. City Health & Hosp. Corp.*, No. 04–CV–5144, 2008 WL 144828, at *4 (S.D.N.Y. Jan. 15, 2008) ("To establish a disability under the ADA, there must be some proof of permanency."); *Adams v. Citizens Advice Bureau*, 187 F.3d 315, 316–17 (2d Cir.1999); *Williams v. Salvation Army*, 108 F. Supp. 2d 303, 312–13 (S.D.N.Y. 2000) ("temporary, non-chronic impairments of short duration, with little or no long-term or permanent impact, are usually not disabilities.").

It appears that even under the ADAAA's broadened definition of disability, short term impairments would still not render a person disabled within the meaning of the statute.  EEOC interpretative guidance explains that the "effects

of an impairment lasting or expected to last fewer than six months can be substantially limiting within the meaning of this section," however "[t]he duration of an impairment is one factor that is relevant in determining whether the impairment substantially limits a major life activity.  Impairments that last only for a short period of time are typically not covered, although they may be covered if sufficiently severe."  29 C.F.R. pt. 1630, Appx. (internal quotation marks and citations omitted).

Conn. Gen. Stat. § 46a-51(15) states that "'[p]hysically disabled' refers to any individual who has any chronic physical handicap, infirmity or impairment, whether congenital or resulting from bodily injury, organic processes or changes or from illness, including, but not limited to, epilepsy, deafness or hearing impairment or reliance on a wheelchair or other remedial appliance or device." Connecticut courts have interpreted Connecticut's definition of "disability" to be "broader than the ADA or the ADAAA, because it covers 'chronic' impairments even if not permanent." *Hutchinson*, 2011 WL 4542957, at *9.  In addition, § 46a-51(15) does not require that the chronic impairment "substantially limit" a major life activity.  *Buotote v. Illinois Tool Works, Inc.*, 815 F. Supp. 2d 549, 556 (D. Conn. 2011); *Grunberg v. Quest Diagnostics, Inc.*, No.3:05–cv–1201, 2008 WL 323940, at *4 n. 2 (D. Conn. Feb. 5, 2008).  "CFEPA . . . provides that '[p]hysically disabled' refers to any individual who has any chronic physical handicap, infirmity or impairment, whether congenital or resulting from bodily injury, organic processes or changes or from illness. . . . The statute does not define 'chronic,' but courts have defined it as 'marked by long duration or frequent

recurrence' or 'always present or encountered.' . . . With reference to diseases, the term 'chronic' has been defined to mean 'of long duration, or characterized by slowly progressive symptoms; deep-seated or obstinate, or threatening a long continuance; distinguished from acute.'" *Logan v. SecTek, Inc.*, 632 F. Supp. 2d 179, 184 (D. Conn. 2009) (*quoting* Conn. Gen. Stat. § 46a-51(15)).

   Here, Plaintiff states that "[a]t the time of [his] visit to Water's Edge, he used a walker and a wheelchair for mobility and qualified as an individual with a disability as defined by the ADA and the Connecticut General Statutes." [Dkt. 1, Compl. at ¶ 3]. In support, Plaintiff offers that he "notified Water's Edge, while making these reservations, that he was disabled, not ambulatory and substantially limited in mobility," that he "used a walker and/or wheelchair and was not otherwise able to move about without assistance," and that he "could not climb stairs due to his mobility restrictions." [Dkt. 1, Compl. at ¶¶ 19, 25]. Nowhere in the complaint does Plaintiff allege the nature of his disability, claim that his use of a walker or wheelchair was permanent or chronic, or indicate the duration or long-term impact of his impairment such that the Court may reasonably infer that his condition was anything but temporary. Indeed, Plaintiff's use of the qualifier "at the time" in describing his impairment while staying at Water's Edge implies that his need for a wheelchair or walker *was* temporary. While Plaintiff has pled facts showing that he was limited in a major life activity – walking – he has failed to demonstrate that he suffers from a non-temporary physical disability that is the cause of the limitation on this major life

activity.[3]  Thus, Plaintiff has failed to state a plausible claim for relief under the ADA.  Accordingly, the Court dismisses Plaintiff's ADA claim.

Likewise, Plaintiff's Conn. Gen. Stat. claim fails for similar reasons as his ADA claim.  Plaintiff alleges only that, at the time of his visit to Water's Edge, he was not ambulatory and was dependent upon a wheelchair and/or walker.  He has pled no other facts indicating that this condition is "chronic" within the meaning of Conn. Gen. Stat. § 46a-51(15).[4]  Such allegations devoid of further factual enhancement fail to state a plausible claim for a violation of Connecticut human rights law and the definition of "physical disabled" as stated in Conn. Gen. Stat. § 46a-51(15).  *See Setkoski v. Bauer*, No.HHDCV116023082, 2012 WL 2044805, at *3 (Conn. Super. Ct. May 10, 2012) (holding that plaintiff's allegations that she had a serious medical condition that required surgery and a blood transfusion and three months of medical leave was insufficient to state a claim under Connecticut statute as plaintiff failed to allege "that her condition is continuing or will require medication or additional procedures" or is subject to recurrences).  Accordingly, Plaintiff's claim under the Connecticut General Statutes is dismissed.

---

[3]     Defendants allege that the reason Plaintiff was restricted to a walker and/or wheelchair during his visit to Water's Edge was that he was recovering from hip surgery.  [Dkt. 16-1, Ds' MTD at p. 12 n. 4].  In his affidavit attached to his Opposition to Defendants' Motion to Dismiss, Plaintiff states that "[w]ith respect to my impairment, I permanently lack complete mobility and, to date, I have undergone three separate surgeries to address the condition."  [Dkt. 21-1, Green Affidavit at ¶ 9].  However, because the Court's review on a motion to dismiss pursuant to Rule 12(b)(6) "is limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated by reference," the Court may not credit Green's affidavit for this proposition.  *McCarthy*, 482 F.3d at 191.

[4]     *See* note 3.

c. __Standing__

Defendants argue that Plaintiff lacks standing to bring a claim under Title III of the ADA or under Conn. Gen. Stat. § 46a-64 because he has not alleged an intent to return to Water's Edge and thus cannot establish a likelihood of future harm, and has not and cannot allege facts to show that he is disabled under either federal or state law.  "To establish standing, a plaintiff must demonstrate: (1) an 'injury in fact' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical'; (2) 'a causal connection between the injury and the conduct complained of'; and (3) redressability of the injury by a favorable decision."  *Harty v. Simon Property Group, L.P.*, 428 F. App'x 69, 71 (2d Cir. June 29, 2011) (*quoting Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal quotation marks omitted)).  Thus, "to establish standing in an ADA suit seeking injunctive relief based upon lack of access to a public accommodation, [the Second Circuit] ha[s] held that a plaintiff must (1) 'allege[ ] past injury under the ADA'; (2) show that 'it is reasonable to infer from [his or] her complaint that this discriminatory treatment will continue'; and (3) show that 'it is also reasonable to infer, based on the past frequency of [his or] her visits and the proximity of [the public accommodation] to [his or] her home, that [he or she] intends to return to [the public accommodation] in the future.'"  *Harty*, 428 F. App'x at 71 (*quoting Camarillo v. Carrols Corp.*, 518 F.3d 153, 158 (2d Cir. 2008)).  Furthermore, "a plaintiff seeking injunctive relief cannot rely only on past injury to satisfy the injury requirement but must show a likelihood of future harm."  *Id.*

Likewise, the Connecticut Supreme Court has adopted the three-part test for individual standing set forth in *Lujan*.  In *Gay and Lesbian Law Students Ass'n at Univ. of Conn. School of Law v. Bd. of Trustees, Univ. of Conn.*, 236 Conn. 453 (Conn. 1996), the Connecticut Supreme Court, in crediting plaintiff's argument for standing, which relied exclusively on *Lujan*, noted that "[t]here is little material difference between what we have required and what the United States Supreme Court in *Lujan* demanded of the plaintiff to establish standing."  *Id.* at 465-67, 466 n. 10.  In so stating, the Connecticut Supreme Court tacitly adopted the three part test articulated in *Lujan*.

Here, Plaintiff has failed in his complaint to allege facts sufficient for the Court to reasonably infer that, based on the past frequency of his visits and the proximity of Water's Edge to his home, Plaintiff intends to return in the future. Plaintiff's complaint does not allege that he has stayed at Water's Edge in the past nor that he regularly visits the Westbrook, Connecticut area for business or personal reasons.  However, Plaintiff has submitted an affidavit with his Opposition to Defendants' Motion to Dismiss, declaring his "every intention of utilizing the Water's Edge for both personal and business visits in the future, but for the existing access issue."  [Dkt. 21-1, Green Aff. at ¶ 2].  Plaintiff affirms that he frequently visits Connecticut in his role as coordinator of his law firm's nationwide practice group, has tried cases in Connecticut and expects to do so in the future, and frequently engages in business development, client activities and social occasions in Connecticut.  [*Id.* at ¶¶ 3-6].  Plaintiff also asserts that his law firm's "managing partner has a weekend residence in Connecticut and he initially

24

identified the Water's Edge as a potential location to host client meetings and partner recreational visits."  [*Id.* at ¶ 7].

In bringing a challenge to standing, "the proper procedural route is a motion under Rule 12(b)(1)."  *Alliance for Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 88 n. 6 (2d Cir. 2006).  *See also McDermott v. New York Metro LLC*, 664 F. Supp. 2d 294, 296 n. 1 (S.D.N.Y. 2009) (holding same).  In considering a 12(b)(1) motion, as enumerated above, the court may consider evidence outside the pleadings.  *Morrison*, 547 F.3d at 170.  Here, Plaintiff has failed to plead in his complaint any intent to return to Water's Edge but has specifically indicated such intent in his affidavit, which the court may consider for purposes of a 12(b)(1) motion.  *See, e.g., Harty*, 428 F. App'x at 71-72 (holding that plaintiff's amended complaint and affidavit in opposition to defendant's motion to dismiss "are sufficient to support a plausible inference at the pleading stage that [plaintiff] will likely return to the [place of public accommodation]" for personal and business reasons).  Thus, Plaintiff's allegations are sufficiently pled to establish standing under the ADA based upon a plausible intention to return to Water's Edge.

Plaintiff, though, has failed to meet his burden of establishing standing based on the likelihood of future harm.  Here, Plaintiff alleges only a temporary disability (as discussed supra), and has failed to allege a continuing disability such that it is reasonable to infer that the discriminatory treatment against him will continue.  Because "a plaintiff seeking injunctive relief cannot rely only on past injury to satisfy the injury requirement but must show a likelihood of future

harm," (*Harty*, 428 F. App'x at 71 (*quoting Camarillo*, 518 F.3d at 158)), Plaintiff has failed to sufficiently demonstrate that he has standing under the ADA based on a likelihood that the discriminatory conduct will continue against him.  As Connecticut law follows the three part test enumerated in *Lujan*, Plaintiff's state law claim fails for the same reason as his ADA claim.

Thus, the Court GRANTS Defendants' entreaty to dismiss the complaint for lack of standing under Rule 12(b)(1).

### d.  Claims Against Individual Defendants

Defendants contend that the complaint should be dismissed in its entirety as against individual defendants Claudio Marasco, Michael Dattilo, and Tina Dattilo, and as against Water's Edge Realty for failure to state a claim under either the ADA or Connecticut law.

### i.  ADA

Title III of the ADA states that "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."  42 U.S.C.A. § 12182(a).  The regulations implementing Title III provide that discrimination is prohibited by any "private entity who owns, leases (or leases to), or operates a place of public accommodation," 28 C.F.R. § 36.201(a), and that "private entity" means "a person or entity other than a public entity."  28 C.F.R. § 36.104.  "In determining whether

an individual is a proper defendant under the ADA, the inquiry must focus on the issue of control, i.e., whether the named defendant 'operates' a place of public accommodation within the meaning of the ADA. . . The term 'operate' has been interpreted as being in a position of authority and having the power and discretion to perform potentially discriminatory acts." *Bowen v. Rubin*, 385 F. Supp. 2d 168, 180 (E.D.N.Y. 2005); *see also Coddington v. Adelphi Univ.*, 45 F. Supp. 2d 211, 215 (E.D.N.Y. 1999) (holding same and reviewing cases).  Under Title III, "'to operate' means 'to put or keep in operation,' 'to control or direct the functioning of,' or 'to conduct the affairs of; manage.'"  *Celeste v. East Meadow Union Free School Dist.*, 373 F. App'x 85, 91 (2d Cir. Apr. 21, 2010) (*quoting Lentini v. Cal. Ctr. for the Arts*, 370 F.3d 837, 849 (9th Cir. 2004) (internal quotations and citations marks omitted).

Defendants urge the Court to find that the individual defendants are not liable under the ADA because "when the public accommodation is owned and run by an institution, the courts have consistently held that an individual employee of the institution is not a proper defendant even if that individual had broad authority to manage the affairs of the institution, and by extension, the affairs of the place of accommodation."  *Schenk v. Verizon*, No. 10 Civ. 6281 (GBD) (MHD), 2010 U.S. Dist. LEXIS 142140, at *9 (S.D.N.Y. Dec. 9, 2010) (holding that individual employee did not exert such control over corporation that she could be said to have operated it within the meaning of the ADA).  The correct analysis, however, as noted above, is one of control; while often individual employees are improper defendants as they lack the requisite control over the institution under the

statute, this is not always the case.  *See, e.g.*, *Bowen*, 385 F. Supp. 2d at 180-81 (finding that individual defendant could be held liable under Title III, where defendant was sole shareholder and president of the place of accommodation, which had no boards of directors, and where individual was "in a position of authority and with power and discretion to operate the facility and to make decisions regarding the training and supervision of the corporations' employees."); *Coddington,* 45 F. Supp. 2d at 215-16 (noting that "Applying the 'control' test, courts have been reluctant to hold individual employees who are not policy makers liable under the ADA," but further noting that, in certain cases, "an individual defendant may be characterized as the owner or operator of a public accommodation under the ADA.").  It is conceivable, then, that the executive vice president, the president, and the general manager of Water's Edge *might* be proper defendants in this action, if they exercised the requisite control over Water's Edge.  As the *Coddington* court noted, "[t]he common thread running through these cases [in which courts consider an individual's liability] is the search for identification of the proper defendant.  Merely holding that an individual is the proper defendant in an ADA public accommodations lawsuit, however, is not tantamount to holding that there is personal liability.  It stands merely for the proposition that an individual may be the proper entity to name as a defendant in a particular lawsuit."  45 F. Supp. 2d at 216.

Here, Plaintiff does not allege any facts in his complaint that would allow the Court to conclude that Marasco, Michael Dattilo, Tina Dattilo, or Water's Edge Realty exercised such control over the functioning or affairs of Water's Edge,

28

were in such positions of authority, or had such power and discretion to perform potentially discriminatory acts that they "own[], lease[] (or lease[] to), or operate[] a place of public accommodation" under Title III of the ADA.  Rather, Plaintiff merely asserts in his complaint the names of the individual Defendants and their titles (Executive Vice President, President, General Manager), and that Water's Edge Realty is a limited liability company located at the same address as Water's Edge.  [Dkt. 1, Compl. at ¶¶ 6-9].  Plaintiff also alleges that Water's Edge Realty is a public accommodation under the ADA, but fails to allege any facts that would support this contention, nor does he allege any other connection between Water's Edge and Water's Edge Realty.   Thus, because Plaintiff's complaint only offers "naked assertion[s] devoid of further factual enhancement" such that the Court is unable to "draw the reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678 (citations and internal quotations omitted), the Court GRANTS Defendants' Motion to Dismiss Plaintiff's ADA claim as to Defendants Marasco, Michael Dattilo, Tina Dattilo, and Water's Edge Realty.

### ii.  Connecticut Law

In addition to the insufficiencies in Plaintiff's complaint detailed above, Plaintiff offers no facts to connect any of the individual Defendants to the conduct complained of, and does not allege discriminatory conduct by any of these Defendants personally.  The complaint is devoid of any allegation that the individual defendants engaged in any conduct that denied Plaintiff "full and equal accommodations in any place of public accommodation" or discriminated against him based on his physical disability in violation of Conn. Gen. Stat. §§ 46a-

29

64(a)(1) or (2).  Thus, the Court GRANTS Defendants' Motion to Dismiss Plaintiff's Connecticut law claim as to Defendants Marasco, Michael Dattilo, Tina Dattilo, and Water's Edge Realty.

### e.  Defendants' Request for Attorneys' Fees

Lastly, Defendants request that this Court award them attorneys' fees because "Plaintiff's claims have no basis in law," and because "a reasonable inquiry would also have informed Plaintiff that Conn. Gen. Stat. § 46a-64 does not permit a private right of action against places of public accommodation," among other reasons.  [Dkt. 16-1, Ds' MTD at p. 16].  Despite Defendants' contentions, there is no evidence in the record that Plaintiff has brought his claims in bad faith and, as enunciated in great detail above, Defendants' assertions about the scope of Conn. Gen. Stat. § 46a-64 are erroneous.  Therefore, the Court DENIES Defendants' claim for attorneys' fees.

## V.  Conclusion

For the foregoing reasons, Defendants' [Dkt. 16] Motion to Dismiss Plaintiff's ADA and Conn. Gen. Stat. § 46a-64(a) claims against all Defendants is GRANTED.  However, the Court DENIES Defendants' request for attorneys' fees.

**IT IS SO ORDERED.**


_____/s/_____
**Hon. Vanessa L. Bryant**
**United States District Judge**


**Dated at Hartford, Connecticut: January 31, 2013**